IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JOSHUA LEE HOSKINS,                    )
                                       )
          Plaintiff,                   )
                                       )
     v.                                )          Case No.   20-cv-302-RJD
                                       )
CHARLES SWISHER, et al.,               )
                                       )
          Defendants.                  )

**ORDER**

**DALY, Magistrate Judge:**

Plaintiff Joshua Lee Hoskins, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed this lawsuit pursuant to 42 U.S.C. § 1983 alleging his constitutional rights were violated while he was incarcerated at Pinckneyville Correctional Center ("Pinckneyville"). In his Amended Complaint, Plaintiff alleges that during his incarceration at Pinckneyville from June 15, 2019 to March 31, 2020, he was denied attendance at religious services, and certain religious items, including his Quran, were confiscated and/or denied. Plaintiff alleges these actions were taken in retaliation for Plaintiff filing grievances and a lawsuit against Pinckneyville staff.

Plaintiff proceeds in this action on the following claims:

> Count One:    First Amendment retaliation claim against Swisher, Wall, Hale, Harriss, Bailey, Justice, Kulich, Rueter, Williams, Heck, Meracle, Dudek, Hermann, Bell, Tomshack, Shirley, Peek, Mumbower, Grove, Adams, Lively, Baker, Vanderkhove, Wangler, Wanack, Jurkowski, Cooley, Johnson, Petitjean, and O'Leary for denying Plaintiff access to religious services and religious materials for filing grievances and lawsuits.

> Count Two:    First Amendment claim against Defendants Swisher, Wall, Hale, Harriss, Bailey, Justice, Kulich, Rueter, Williams, Heck, Meracle,

> Dudek, Hermann, Bell, Tomshack, Shirley, Peek, Mumbower, Grove, Adams, Lively, Baker, Vanderkhove, Wangler, Wanack, Jurkowski, Cooley, Johnson, Petitjean, and O'Leary for substantially burdening Plaintiff's exercise of religion.

Count Three:   First Amendment retaliation claim against Justice, Bell, Wangler, Wanack, and Heck for bringing false disciplinary charges against Plaintiff and placing him in segregation for filing grievances and lawsuits.

This matter is now before the Court on Defendants' Motions for Summary Judgment (Docs. 211 and 222).   For the reasons set forth, the Motion for Summary Judgment filed by Defendants Jana Rueter and Anthony Williams (Doc. 211) is **GRANTED**, and the Partial Motion for Summary Judgment filed by Defendants Adams, Bailey, Baker, Cooley, Dudek, Groves, Harriss, Heck, Hermann, Johnson, Jukowski, Justice, Kulich, Lively, Mumbower, Petitjean, Swisher, Vanderkhove, Wall, Wanack, Wangler, Shirley, Peek, Meracle, Hale, O'Leary, Bell, and Tomshack (Doc. 222) is **GRANTED IN PART AND DENIED IN PART**.

## Factual Background

Plaintiff transferred to Pinckneyville on June 5, 2019 (Doc. 212-1 at 233).   Plaintiff's allegations span from June 5, 2019 through March 31, 2020 (*id.* at 9).   At all times relevant, Plaintiff identified as an Al Islam Muslim (*id.* at 30).   To practice his religion, Plaintiff needed to read the Quran and go to services, including Jumu'ah services, which are held on Fridays (*id.* at 43-44).   If Plaintiff could not attend Jumu'ah services, he could salat (engage in prayer) (*id.* at 46-47).   Salat must be done on a prayer rug (*id.*).   An inmate can request a Quran from the chaplain at any facility, including Pinckneyville (*id.* at 87).   Prayer rugs and kufi caps may be donated to a facility and provided upon request if they are available (*id.* at 208).   In order to attend Jumu'ah services, an inmate must submit a request to the chaplain by the prior Wednesday (*id.* at 158-59).   Inmates in segregation or on crisis watch are not able to attend Jumu'ah services or any other

religious services (*id.* at 158-59).

At the time of his transfer to Pinckneyville, Plaintiff was not off his "deen"[1] with regard to the practice of his religion (*id.* at 202).   However, upon his arrival at Pinckneyville, Plaintiff was not able to be on his "deen" because he was not able to pray salat, attend Jumu'ah services, or possess and practice his religion with a Quran, kufi, prayer rug, or watch (*id.* at 43, 50-52). Plaintiff remains off his "deen" at Dixon (*id.* at 202).

Plaintiff testified that shortly after his arrival at Pinckneyville, Defendant Swisher saw Plaintiff and told him that because Plaintiff had filed a lawsuit against him, he was going to make sure Plaintiff did not receive his religious items and he would not be allowed to attend Jumu'ah services (Doc. 212-1 at 233-34).   Plaintiff subsequently received his property in July 2019, and his religious items were not included (*id.* at 234).   Specifically, Plaintiff's kufi, prayer rug, watch, and Quran were not returned to him when he received his property (*id.* at 85-86).   Plaintiff testified that Defendants Wall and Swisher told Plaintiff they had confiscated his religious property (*id.* at 234).   According to Plaintiff, the other twenty-eight defendants all acknowledged they knew Plaintiff's religious items were confiscated and told Plaintiff they would shakedown and search his cell to make sure he did not have any Islamic materials or a watch in his possession (*id.* at 235). Defendants purportedly also told Plaintiff they would ensure Plaintiff did not send letters to outside institutions for Islamic materials or send kites to the chaplain to attend Jumu'ah services (*id.*). More specifically, Defendants Lively and Adams told Plaintiff they were going to have officers target his cell for searches, and Defendants Bell, Justice, Wanack, Baker, and Vanderkhove conducted shakedowns of Plaintiff's cell (*id.* at 247-50).   Plaintiff acknowledged, however, that

---

[1] "Deen" has various meanings and interpretations.  Based on the context of Plaintiff's deposition testimony, the Court uses the term to mean actively practicing and abiding by the requirements of Plaintiff's religion.

cell compliance checks were done on all cells a few times per week (*id.* at 236, 251).    Plaintiff's cell was also shaken down frequently (*id.* at 238).    Each time Plaintiff's cell was searched Defendants would remark it was in retaliation for Plaintiff's filing of grievances and lawsuits (*id.* at 253).    There is no record of any instance in which a search of Plaintiff's cell resulted in any action, including confiscation of any materials or issuance of any disciplinary tickets.    According to Plaintiff, Defendants told him they took these actions because he filed a lawsuit against Swisher and other grievances against Pinckneyville staff members (Doc. 224 at 26; Doc. 212-1 at 218).

Immediately upon his arrival at Pinckneyville on June 5, 2019, Plaintiff was placed in segregation until September 25, 2019 due to an incident that occurred at Stateville Correctional Center (Doc. 212-1 at 100, 102).    While in segregation, inmates are not allowed to attend religious services; as such, Plaintiff could not attend Jumu'ah during this period (*id.* at 101).    Plaintiff was also placed in segregation from January 6, 2020 to February 6, 2020 and was once again not able to attend Jumu'ah services (*id.* at 100, 102).    Plaintiff testified he was placed in segregation during this one-month period in 2020 because Defendants Justice, Bell, Wanack, and Wangler filed a false disciplinary ticket against him, for which he was found guilty (*id.* at 102).    Defendant Justice wrote the ticket and Defendant Bell was listed as a witness (*id.* at 260).    Defendant Heck was on the adjustment committee that heard the ticket and found Plaintiff guilty of the same (*id.* at 258). It is not clear what particular involvement Wanack and Wangler had in the issuance of this ticket. Plaintiff asserts Defendants told him they were going to file a false disciplinary ticket against him so that he would not be able to attend Jumu'ah services (*id.* at 102, 174).

When Plaintiff was in general population, he sent kites to the chaplain at Pinckneyville asking to attend Jumu'ah services (Doc. 212-1 at 77).    The first time Plaintiff wrote to the chaplain to attend services was after he was released from segregation in September 2019 (*id.* at 241-42).

Plaintiff never received a response to his kites.   Plaintiff also sent a kite to the chaplain around the summer of 2020 requesting a Quran, but he never received any response to this kite (*id.* at 87). The Pinckneyville chaplain has no records indicating Plaintiff had any interaction with the chapel while Plaintiff was at Pinckneyville (Doc. 212-3).   Plaintiff never spoke with the chaplain at Pinckneyville (Doc. 212-1 at 221).   Plaintiff never submitted a request for a prayer rug or kufi cap because such items were not generally provided by IDOC facilities (*id.* at 269).   Plaintiff also sent letters to the Islamic Institute while he was incarcerated at Pinckneyville (*id.* at 94).   Plaintiff estimated he sent at least two, but less than ten letters and never received any response to the same (*id.* at 94-95).   Plaintiff testified he believed the letters were screened and destroyed (*id.* at 95).

Plaintiff testified he saw Defendant Jana Rueter, a mental health nurse employed by Wexford and assigned to Pinckneyville, at a medication non-compliance meeting on October 29, 2019 (Doc. 212-1 at 109).   Defendant Rueter purportedly told Plaintiff she disliked Plaintiff and knew he had filed a lawsuit against Defendant Swisher and grievances against another nurse (*id.* at 110, 114).   Plaintiff asserts Rueter indicated she knew Plaintiff was Muslim, that Defendants were restricting his practice of religion, and that she encouraged Defendants' actions (*id.* at 111). Rueter told Plaintiff that if they found any Islamic material in Plaintiff's cell, she would write a "bogus" ticket on Plaintiff (*id.*).   Defendant Rueter never wrote a disciplinary ticket against Plaintiff (*id.* at 123).   Defendant Rueter attests she was never aware that Plaintiff did not have access to religious items or services, and that she did not support any act to deny Plaintiff access to the same (Doc. 212-4 at ¶¶ 4-5).

Plaintiff saw Defendant Anthony Williams, a qualified mental health professional employed by Wexford and assigned to Pinckneyville, on June 27, 2019 and July 8, 2019 (Doc. 212-1 at 140, 149).   On June 27, 2019, Plaintiff's medical records indicate he refused mental

health services, and said form was signed by Defendant Williams (Doc. 212-2 at 55).   Plaintiff, however, testified that he did not refuse mental health services and advised Williams on this date that he was a Muslim and that officers were preventing him from practicing his religion (Doc. 212-1 at 149-51).   Plaintiff testified that Defendant Williams indicated he "salute[d]" staff members for what they were doing to Plaintiff and would help these officers because Williams did not like that Plaintiff had filed grievances against Defendant Swisher (*id.* at 150-51).   On July 8, 2019, Defendant Williams evaluated Plaintiff as a suicide risk (*id.* at 142; Doc. 212-2 at 45).   Plaintiff testified he told Defendant Williams that he was agitated that his Quran, kufi, and prayer rug were confiscated (Doc. 212-1 at 147).   According to Plaintiff, Defendant Williams told Plaintiff he knew what the officers were doing and he supported it (*id.*).   According to Plaintiff, Defendant Williams indicated that if he discovered Plaintiff was in possession of any Islamic materials, Williams would tell the officers and make sure it was confiscated (*id.* at 154).

Defendant Williams attests he was not involved in prisoner religious items or services in any way, and that he did not oversee or have any authority over correctional staff (Doc. 212-5 at ¶¶ 5-6).   Defendant Williams further attests that his actions were not motivated or directed by Officer Swisher; rather, his actions were solely focused on offering Plaintiff mental health services (*id.* at ¶ 8).   Defendant Williams asserts he would not and did not support or encourage any act to deny Plaintiff access to religious items or services (*id.* at ¶ 9).

### Summary Judgment Standard

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005).   The

moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

## Discussion

### Count One – First Amendment Retaliation Claim – Denial of Access to Religious Services and Religious Materials

In support of this claim, Plaintiff alleges Defendants acted to deny him access to religious materials, including his Quran, prayer rug, kufi cap, and watch, and restricted his ability to attend Friday Jumu'ah services because he filed grievances and lawsuits.

A prison official who takes action in retaliation for a prisoner's exercise of a constitutional right violates the Constitution. *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). The Seventh Circuit has articulated that for a plaintiff to prevail on a First Amendment retaliation claim, he must show that: (1) he engaged in speech or activity that was protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment speech or activity in the future; and (3) the First Amendment activity was "at least a motivating factor" in the defendant's decision to take the retaliatory action. *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020) (citing *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012). "The 'motivating factor' amounts to a

causal link between the activity and the unlawful retaliation.  *Id.* (citation omitted). Circumstantial evidence of a party's motivation may include suspicious timing, ambiguous statements, behavior, or comments directed at others in the protected group.  *Id.* (citation omitted).

If a plaintiff can establish a prima facie case of retaliation, the burden shifts to the defendant to rebut the causal inference raised by the plaintiff's evidence and show that the harm would have occurred anyway, despite the protected activity.  *Id.* (citation omitted).  If the defendant makes the required showing, the plaintiff must demonstrate that the proffered reason is pretextual or dishonest.  *Id.* (citation omitted).

As a preliminary matter, the Court notes that in their conclusion paragraph of their summary judgment motion, Defendants Swisher and Wall state that Plaintiff shall proceed in this matter on Count One against them (Doc. 222 at 10).  However, it is apparent in their brief that Wall and Swisher only concede as to Count Two.  As such, the Court finds this was a typographical error and considers whether summary judgment is warranted as to all Defendants based on the evidence in the record on Count One.

The primary basis for Plaintiff's retaliation claim suffers from a fatal flaw — the majority of Defendants named in this claim did not take any action in response to Plaintiff's filing of grievances and lawsuits; rather, they merely made "threats" in an alleged attempt to prevent Plaintiff from practicing his religion.  The question on this claim, then, is whether Plaintiff suffered a deprivation likely to deter future First Amendment speech or activity.

First, the Court considers this claim only as to Defendants Rueter, Williams, Bailey, Cooley, Dudek, Groves, Harriss, Heck, Hermann, Johnson, Jukowski, Kulich, Mumbower, Petitjean, Shirley, Peek, Meracle, Hale, O'Leary, Bell, and Tomshack.  When crediting Plaintiff's testimony, as the Court must do at this stage in the proceedings, these Defendants all threatened to

either confiscate Plaintiff's religious items and/or write him disciplinary tickets if he had religious items or sought to attend religious services, or at least condoned the same.

In determining whether an action would likely deter First Amendment activity, the Court applies an objective test and considers "whether the alleged conduct by the defendants would likely deter a person of ordinary firmness from continuing to engage in protected activity." *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020) (citing *Surita v. Hyde*, 665 F.3d 860, 878 (7th Cir. 2011). "Whether retaliatory conduct is sufficiently severe to deter is generally a question of fact, but when the asserted injury is truly minimal, we can resolve the issue as a matter of law." *Id.* at 647.

While the Court acknowledges the Seventh Circuit's position that retaliatory speech, such as a threat, may be actionable if "punishment, sanction, or adverse regulatory action will immediately follow," *Novoselsky v. Brown*, 822 F.3d 342, 356 (7th Cir. 2016), the Court has never seen it applied in circumstances akin to those here.   Indeed, *Novoselsky* considered whether the defendant county clerk's speech, which involved sending a complaint to the Attorney Registration and Disciplinary Committee (ARDC) concerning the plaintiff, was retaliatory speech.   The court found the clerk's speech, "however impolitic," was not sufficient to constitute a threat, coercion, or humiliation sufficient to establish a deprivation of a First Amendment right.   822 F.3d at 357.

In the context of cases brought by inmates alleging retaliation, the Court finds no precedent for finding threats sufficient to constitute an adverse action.   In *Pegues v. Orrill*, the court considered whether a person of "ordinary firmness" would have been deterred from exercising their First Amendment rights when faced with sporadic threats, derogatory remarks, and sophomoric behavior of the defendant institutional staff member.   Case No. 13-CV-3200, 2015 WL 1058806, at *3 (C.D. Ill. Mar. 5, 2015).   The court found that these actions, even when combined with the fact that the defendant wrote a false disciplinary ticket on the plaintiff, did not

support a retaliation claim. *Id.* More specifically, the court found that "a verbal reprimand …
like a verbal threat, is not adverse enough to support a retaliation claim," and the actions by the
defendant would not deter a person of ordinary firmness from engaging in First Amendment
activity. *Id.*

Similarly, in *Duncan v. Baird*, the court considered the plaintiff inmate's retaliation claim
that employees of the Cook County Department of Corrections verbally harassed him, filed
disciplinary reports against him, placed him in solitary confinement, and refused to deliver his
mail after he filed various grievances. No. 04-C-3196, 2004 WL 2339334, at *1-2. On a motion
to dismiss, the court dismissed the plaintiff's retaliation claim without prejudice at least in part on
the plaintiff's failure to ascribe any "specific exercise of his constitutional rights that led to any
punitive action by Defendants." *Id.* at *4. Simply put, the court found that the plaintiff's
retaliation claim that the defendants threatened him, without more, failed. *Id.*

Finally, the undersigned finds the purported threats in this instance akin to those considered
in *Poullard v. McDonald*, 829 F.3d 844 (7th Cir. 2016). In *Poullard*, the Seventh Circuit stated
that at least in the employment context, "threats of unspecified disciplinary action do not constitute
adverse actions." *Id.* at 856. The court remarked that Federal law only protects employees from
retaliation that produces an injury, and the mere threat of discipline does not necessarily equate to
an actual harm that affected the plaintiff's compensation, career prospects, or conditions of
employment. *Id.* at 856-57. While certainly mindful this is not retaliation in the employment
context, here, the mere threat of a disciplinary ticket also does not equate to any cognizable adverse
event. As in *Pegues*, a disciplinary ticket may result in a mere verbal reprimand. It is also
possible that the adjustment committee would not find a plaintiff guilty of a disciplinary ticket.
Thus, Plaintiff's assertions that Defendants made vague, nebulous threats of writing false

disciplinary tickets against him is not sufficient to establish a deprivation likely to deter First Amendment speech.   In other words, these vague threats were not likely to result in immediate punishment or sanction, which must be the case to recognize speech as potentially retaliatory.   *See Novoselsky*, 822 F.3d at 356.   Because Plaintiff's only evidence against Defendants Rueter, Williams, Bailey, Cooley, Dudek, Groves, Harriss, Heck, Hermann, Johnson, Jukowski, Kulich, Mumbower, Petitjean, Shirley, Peek, Meracle, Hale, O'Leary, Bell, and Tomshack is that they made such threats, the Court enters summary judgment in their favor as to Count One.

Next, the Court considers Plaintiff's testimony that Defendants Lively and Adams had officers target his cell for searches and Defendants Bell, Justice, Wanack, Baker, and Vanderkhove conducted such searches.   Plaintiff testified they conducted these searches to ensure he did not have any religious property in his possession.   This, however, is speculation.   In any event, Plaintiff testified cell compliance checks were undertaken a few times per week of all the cells, and shakedowns occurred at random.   There is no evidence beyond pure speculation that Plaintiff's cell was arbitrarily searched more often than others, or that it was conducted in a targeted manner.   Cell searches are simply part of incarceration and there is nothing in the record evidencing the searches of Plaintiff's cell were beyond what was typical.   As such, the cell searches undertaken by Defendants Lively, Adams, Bell, Justice, Wanack, Baker, and Vanderkhove do not support a claim of retaliation and these Defendants are entitled to summary judgment on Count One.   *See West v. Kingsland*, 679 F.App'x 482, 486 (7th Cir. 2017) (the plaintiff "did not suffer an actionable deprivation when his cell was searched .... By regulation cells at [the plaintiff's] prison were searched monthly if not more often, and he did not introduce any evidence suggesting that his cell was targeted more frequently.") (citations omitted).

The only remaining evidence of any actions taken by defendants relevant to Count One

relates to Defendants Swisher and Wall[2].   Crediting Plaintiff's testimony, as the Court must do at this stage in the proceedings, Swisher and Wall admitted they were involved in confiscating Plaintiff's religious items, including his Quran, prayer rug, kufi, and watch, shortly after he arrived at Pinckneyville.   Defendants have not set forth evidence to dispute this claim.   This is sufficient to establish a deprivation likely to deter First Amendment activity as these actions are significant and clearly went beyond mere threats.   Also, while scant, Plaintiff set forth some evidence that Defendants took this action due to Plaintiff filing grievances and lawsuits (*see* Doc. 224 at 26). While Plaintiff's evidence of this retaliatory motive is based solely on his testimony and is quite vague, Defendants have failed to establish any other reason or motive for their purported confiscation of Plaintiff's religious items.   Thus, at this stage in the proceedings, the Court cannot grant summary judgment in favor of Defendants Swisher and Wall on Count One.

***Count Two – First Amendment Religious Exercise Claim***

The Seventh Circuit recognizes that an inmate retains the right to exercise his religious beliefs in prison.  *Kaufman v. McCaughtry*, 419 F.3d 678, 681 (7th Cir. 2005) (citing *Tarpley v. Allen County*, 312 F.3d 895, 898 (7th Cir. 2002).   Accordingly, it is well settled in this Circuit that the First Amendment protects a prisoner's sincerely-held religious beliefs from arbitrary discrimination by the government.  *See Vinning-El v. Evans*, 657 F.3d 591, 593-94 (7th Cir. 2011) (stating that "[s]incere religious beliefs must be accommodated (at least when failure to accommodate a particular belief would amount to discrimination against one sect, or a personal faith), but non-religious beliefs need not be." (quoting *Thomas v. Review Board*, 450 U.S. 707,

---

[2] Plaintiff's claim that Defendants Justice, Bell, Wanack, and Wangler filed a false disciplinary ticket against him, for which he was found guilty in part by Defendant Heck, could be construed as part of Count One; however, it is specifically set forth in Count Three.   As such, the Court will consider evidence related to this incident only as to Count Three.

713 (1981); *United States v. Seeger*, 380 U.S. 163, 185 (1965); *Kaufman v. McCaughtry*, 419 F.3d 678, 681 (7th Cir. 2005).   However, a prison may impose restrictions on the exercise of religion that are reasonably related to the legitimate penological objectives of the state.   *Tarpley v. Allen County, Ind.*, 312 F.3d 895, 898 (7th Cir. 2002) (citations omitted).   An inmate is not entitled to practice every aspect of his religion.   *Id.*   Inmates generally retain those First Amendment rights that are "consistent with prison discipline."   *Ustrak v. Fairman*, 781 F.2d 573, 580 (7th Cir. 1986).

Defendants, aside from Wall and Swisher who concede Plaintiff can survive summary judgment on this claim, assert there is no evidence they took any personal action that restricted Plaintiff's practice of his religion.   The Court agrees.   Plaintiff's testimony sets forth evidence that Defendants (aside from Swisher and Wall), threatened to confiscate religious items possessed by Plaintiff and prevented him from attending religious services by monitoring his mail and chaplain requests.   There is no evidence, however, that Defendants took any action to effect the same or followed through on these purported threats.   There is also no evidence that the searches of Plaintiff's cell resulted in the confiscation of any religious items.   Indeed, Plaintiff admits he did not attempt to possess religious items while at Pinckneyville.   Also, Plaintiff asserts his letters directed to the Islamic Institute and kites to the chaplain were intercepted, but there is no evidence implicating any Defendant in any such confiscation or destruction of these writings.   Plaintiff has only presented speculation regarding what actions may or may not have been taken by Defendants. This is insufficient to create a genuine issue of material fact on Count Two.

Finally, Plaintiff's testimony that Defendants Justice, Bell, Wanack, Wangler, and Heck were involved in writing a false disciplinary report so that he would be placed in segregation and would be unable to attend Jumu'ah services can also not withstand Defendants' motion for summary judgment.   Plaintiff testified that any inmate in segregation is not allowed to attend any

religious services.   Courts have considered the constitutionality of such restrictions on inmates in segregation and determined such restrictions do not violate the First Amendment as they are related to legitimate, penological objectives.   *See, e.g., Carter v. Howard*, No. 04-1157, 2007 WL 2566257, at *5 (C.D. Ill. July 10, 2007) (Legitimate penological reasons exist for not permitting inmates in segregation status to attend communal religious services).   More importantly, Defendants Justice, Bell, Wanack, Wangler, and Heck were only involved in issuing the disciplinary ticket and/or imposing punishment in segregation on the same.   There is no evidence they had any involvement in the decision of whether inmates, including Plaintiff, would attend religious services while in disciplinary segregation, a fact the court in *Carter* considered in finding that the defendants did not cause or participate in the alleged unconstitutional restriction of the plaintiff's religious practice.   *Id.* at *7.

For these reasons, the Court finds summary judgment in favor of Defendants Hale, Harriss, Bailey, Justice, Kulich, Rueter, Williams, Heck, Meracle, Dudek, Hermann, Bell, Tomshack, Shirley, Peek, Mumbower, Grove, Adams, Lively, Baker, Vanderkhove, Wangler, Wanack, Jurkowski, Cooley, Johnson, Petitjean, and O'Leary on Count Two is warranted.   Plaintiff shall proceed on Count Two against Defendants Swisher and Wall.

***Count Three – First Amendment Retaliation Claim – False Disciplinary Charges against Justice, Bell, Wangler, Wanack, and Heck***

Plaintiff asserts Defendants Justice, Bell, Wangler, Wanack, and Heck told him they were writing a false ticket against him so that he would be sent to segregation and could not attend religious services.   Plaintiff testified Defendants took this action because he filed lawsuits and grievances.   With regard to particularities, this claim and evidence of the same is scant.   Plaintiff testified Justice wrote the ticket, Bell was listed as a witness, and Heck was part of the adjustment

committee that heard the ticket and found Plaintiff guilty.   This ticket is not in the record and Defendants make no mention of the same in their brief.   Thus, it is not clear what the charge was, what evidence was considered by the committee, or what punishment, aside from 30 days in segregation, was meted out[3].

Defendants assert this claim must fail because Plaintiff was not attempting to attend Jumu'ah services prior to or after the alleged actions regarding the disciplinary ticket.   This is contradicted by the record.   More specifically, Plaintiff testified he attempted to write the chaplain requesting to attend services after he was released from segregation in 2019, but to no avail.

Without more in the record, however, the only Defendant for which there is sufficient evidence to substantiate a retaliation claim related to Plaintiff's claim of a false disciplinary ticket is Defendant Justice.   Plaintiff has not set forth any evidence regarding the involvement of Wangler and Wanack on this ticket.   It is also not clear what action, if any, was taken by Bell, who was merely a "witness" for this ticket.   Plaintiff identifies Heck as a member of the adjustment committee, but he fails to set forth any evidence beyond pure speculation that Heck knew the ticket was false or otherwise acted in retaliation in finding Plaintiff guilty on the same. Plaintiff's testimony concerning this ticket is vague and imprecise, and, as such, no reasonable jury could find any Defendant aside from Justice acted with retaliatory motive in their involvement in the same.   For these reasons, Defendants Bell, Wangler, Wanack, and Heck are entitled to summary judgment as to Count Three.

### *Qualified Immunity*

IDOC Defendants include a blanket qualified immunity argument in their motion.

---

[3] It is not clear if Plaintiff lost any good conduct credit as a result of this ticket.   Defendants included an affirmative defense based on *Heck v. Humphrey* in their Answer, but did not make invoke this defense in their brief.

Generally, government officials are protected from civil liability when performing discretionary functions under the doctrine of qualified immunity so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Alvarado v. Litscher*, 267 F.3d 648, 652 (7th Cir. 2001).   Based on the foregoing, the only claims Plaintiff shall proceed on is a First Amendment retaliation claim against Wall and Swisher, a First Amendment Free Exercise claim against Wall and Swisher, and a retaliation claim against Justice.   The actions purportedly taken by these Defendants, including confiscating Plaintiff's religious materials (both in and of itself and as retaliation for Plaintiff filing lawsuits and grievances) and writing a false disciplinary ticket against Plaintiff, violate clearly established constitutional rights as set forth above.   For these reasons, Defendants Wall, Swisher, and Justice are not entitled to qualified immunity.

## Conclusion

Based on the foregoing, the Motion for Summary Judgment filed by Defendants Jana Rueter and Anthony Williams (Doc. 211) is **GRANTED**, and the Partial Motion for Summary Judgment filed by Defendants Adams, Bailey, Baker, Cooley, Dudek, Groves, Harriss, Heck, Hermann, Johnson, Jukowski, Justice, Kulich, Lively, Mumbower, Petitjean, Swisher, Vanderkhove, Wall, Wanack, Wangler, Shirley, Peek, Meracle, Hale, O'Leary, Bell, and Tomshack (Doc. 222) is **GRANTED IN PART AND DENIED IN PART.**

The Clerk of Court shall enter judgment in favor of Defendants Rueter, Williams, Adams, Bailey, Baker, Cooley, Dudek, Groves, Harriss, Heck, Hermann, Johnson, Jukowski, Kulich, Lively, Mumbower, Petitjean, Vanderkhove, Wanack, Wangler, Shirley, Peek, Meracle, Hale, O'Leary, Bell, and Tomshack and against Plaintiff at the close of this case.

Plaintiff shall proceed on the following claims:

Count One:    First Amendment retaliation claim against Swisher and Wall for confiscating Plaintiff's religious items upon his arrival at Pinckneyville due to Plaintiff's filing of grievances and lawsuits.

Count Two:    First Amendment claim against Defendants Swisher and Wall for substantially burdening Plaintiff's exercise of religion by confiscating Plaintiff's religious items upon his arrival at Pinckneyville due to Plaintiff's filing of grievances and lawsuits.

Count Three:  First Amendment retaliation claim against Justice for bringing false disciplinary charges against Plaintiff and placing him in segregation for filing grievances and lawsuits.

**IT IS SO ORDERED.**

**DATED: March 22, 2023**

_s/_ _Reona J. Daly_
**Hon. Reona J. Daly**
**United States Magistrate Judge**

Page **17** of **17**